Jamon R. Hicks, Esq. (SBN 232747)
Jamon@douglashickslaw.com
Bianca V. Perez, Esq. (SBN 327590)
Bianca@douglashickslaw.com
DOUGLAS / HICKS LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056
Telephone: (323) 655-6505
Facsimile:  (323) 927-1941
Counsel for Plaintiff,
ANGEL NAVARETTE

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL NAVARETTE, an individual,<br><br>     Plaintiff,<br>vs.<br><br>COUNTY OF LOS ANGELES, a public entity, and DOES 1-10 inclusive,<br><br>     Defendants. | Case No.: # _____<br><br>**COMPLAINT FOR DAMAGES & DEMAND FOR JURY TRIAL**<br><br>1. First Amendment – Retaliation (42 U.S.C. § 1983)<br>2. Fourth Amendment – Excessive Force (42 U.S.C. § 1983)<br>3. Municipal Liability – Unconstitutional Custom, Practice or Policy (42 U.S.C. § 1983)<br>4. Municipal Liability – Failure to Properly Train (42 U.S.C. § 1983) |

## COMPLAINT FOR DAMAGES

1.  Plaintiff, ANGEL NAVARETTE (hereinafter as "MR. NAVARETTE") complains of defendants COUNTY OF LOS ANGELES ("COUNTY"), a public entity, and DOES 1-10 (collectively hereinafter as "DEFENDANTS"), inclusive, for damages and Demand for Jury Trial, and alleges as follows:

## INTRODUCTION

2.  This civil rights action seeks compensatory damages against DEFENDANTS and punitive damages from DOES 1-10 (of these 10 DOES, certain officers were sheriff deputies that were present at the September 25, 2020 West Hollywood protest who violently engaged with peaceful protestors and caused PLAINTIFF's injury; those deputies will be hereinafter as "DOE DEPUTIES") for violating various rights under the United States Constitution in connection with the Deputies' unjustified assault and use of excessive force of MR. NAVARETTE while PLAINTIFF peacefully protested the murder of Breonna Taylor.

3.  Following the thousands of deaths of unarmed people of color, hundreds of thousands of people across the world simultaneously expressed their disgust, frustration, and condemnation for the deaths of the Black men and women, and sometimes children, in the United States of America, including, and not limited to, Breonna Taylor, Stephon Alonzo Clark, and the most recent George Perry Floyd. These people united in support for the Black Lives Matter movement.

4.  One of those large demonstrations occurred in CITY of West Hollywood on September 25, 2020. The majority of the protest's participants, including PLAINTIFF, were peaceful.

5.  In fact, the violence that erupted that day was instigated and brought on by the Los Angeles County Sheriff's Department (hereinafter as "LASD") deputies who were armed in riot gear, used highly controversial "kettling" crowd control tactics to "trap and detain" peaceful protesters, and violently struck MR.

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

NAVARETTE in the leg as he laid face down on the ground with multiple Deputies bracing them with their weight. During this time PLAINTIFF was not resisting and he was not any threat of harm to anyone – not to police officers, bystanders, or anyone else.

6.  By preemptively banning peaceful assemblies, kettling the peaceful demonstrators, and violently, and with reckless disregard for safety of citizens, violently striking unarmed and peaceful protestors, including MR. NAVARTTE in the leg, DEFENDANTS violated PLAINTIFF's rights under the United States and California Constitutions.

7.  At all times relevant DOE DEPUTIES were members of the LASD or other law enforcement agencies who were responding to COUNTY's request for mutual aid, and were duly authorized employees of COUNTY, acting under color of law, within the course and scope of their respective duties as LASD officers, and with the complete authority and ratification of COUNTY.

8.  DOE DEPUTIES are directly liable for MR. NAVARETTE's injuries under federal law pursuant to 42 U.S.C. § 1983.

9.  COUNTY and DOES 1-10 also proximately caused PLAINTIFF's injuries and are liable under federal law and under the principles set forth in *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

10. The policies and customs behind restricting the right to assemble and assaulting peaceful protestors, such as PLAINTIFF, are fundamentally unconstitutional and constitute a menace of major proportions to the public.

11. Accordingly, PLAINTIFF seeks, by way of this action, to hold those responsible for the unjustified assault and use of force, accountable.

## PARTIES

12. At all relevant times, PLAINTIFF **ANGEL NAVARETTE**, is an LatinX male over the age of eighteen, and a resident of the County of Los Angeles, California. At all times relevant, MR. **NAVARETTE**, was a peaceful protestor

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

showing solidarity with the Black Lives Matter Movement to peacefully protest by using his voice to hold police departments accountable for their brutality and killings of unarmed Black Americans. He was peacefully protesting near Santa Monica and San Vicente Blvd. when he was pushed to the ground, violently attacked with the riot shield, striking him multiple times, causing him bruising, bleeding, and pain.

13. At all relevant times, Defendant, **COUNTY OF LOS ANGELES**, is and was a duly organized public entity, form unknown, existing under the laws of the State of California. LASD is a local government entity and an agent of the COUNTY, and all actions of the LASD are the legal responsibility of the COUNTY.

14. Furthermore, at all relevant times, COUNTY possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the LASD and its tactics, methods, practices, customs, and usages. At all relevant times, COUNTY was the employer of DOES 1-10 who were COUNTY police officers, police officers' supervisorial officers, and who were managerial supervisorial and policymaking employees of COUNTY LASD. On information and belief, at all relevant times, DOES 1-10 were residents of the County of Los Angeles, California.

15. At all times relevant, COUNTY was responsible for assuring that the actions, omissions, policies, practices, and customs of the LASD and its employees and agents complied with the laws of the United Sates and the State of California.

16. COUNTY is sued in its own right on the basis of its policies, customs, and practices that gave rise to PLAINTIFF's federal rights claims.

17. At all relevant times, **Defendants DOES 1-10** were duly authorized employees and agents of COUNTY, who were acting under color of law within the course and scope of their respective duties as police officers and with the

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

complete authority and ratification of their principal, COUNTY.

18. At all relevant times, DOE DEPUTIES were duly appointed officers and/or employees of agents of COUNTY, subject to oversight and supervision by COUNTY's elected and non-elected officials.

19. In doing the acts and failing and omitting to act as hereinafter described, DOE DEPUTIES were acting on the implied and actual permission of COUNTY.

20. At all times mentioned herein, each and every COUNTY defendant was the agent of each and every other COUNTY defendant and had the legal duty to oversee and supervise the hiring, conduct and employment of each and every COUNTY defendant.

21. PLAINTIFF is informed and believes and thereon alleges that each of the Defendants designated as a DOE are intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged. The true names and capacities of DOES 1 through 50 (hereinafter as "DOES"), inclusive, and each of them, are not now known to PLAINTIFF who, therefore, sues said Defendants by such fictitious names. PLAINTIFF will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

22. All DEFENDANTS who are natural persons, including DOES 1-10, are sued individually and/or in his/her official capacity as officers, sergeants, captains, commanders, supervisors, and/or civilian employees, agents, policy makers, and representatives for COUNTY.

## JURISDICTION AND VENUE

23. Jurisdiction is conferred upon this Court by 28 U.S.C §§1331and 1334 1367 and arises under 42 U.S.C. §§ 1983, 1985, 1986, 1988 and the Fourth and Fourteenth Amendments of the United State Constitution.

24. Venue is proper in the Western Division of the Central District of California pursuant to 28 U.S.C. § 1391 because the events and conduct giving rise to

PLAINTIFF's claims all occurred in Los Angeles County, in City of West Hollywood.

## FACTS COMMON TO ALL COUNTS

25. PLAINTIFF realleges each and every allegation above with the same force and effect as if fully set forth herein.

26. On September 26, 2020, PLAINTIFF attended a protest in West Hollywood. The protest was regarding the Breonna Taylor case, specifically that no charges were brought against the involved officers. PLAINTIFF attended the protest not just as a participant, but also intended to take pictures and videos to document the activities.

27. At or around 8:50 p.m., PLAINTIFF was riding in the back of a white pickup truck, filming the protest activities on his phone. There were four total people in the truck – the driver, a passenger inside the truck, and PLAINTIFF and one other person in the truck bed. There was also another truck that was driving alongside the truck that PLAINTIFF was riding in. The trucks were near the intersection of Santa Monica Blvd. and San Vincente Blvd.

28. LASD Deputies, including DOE DEPUTIES, entered the intersection and cut off the two trucks. The trucks stopped, facing the deputies. The deputies then began yelling for everyone to get out of the trucks. PLAINTIFF began to exit the truck bed and head toward the sidewalk.

29. Within seconds of getting off the truck, PLAINTIFF, who was still live streaming to Instagram, dropped his phone onto the ground. As PLAINTIFF bent down to retrieve his phone, an unknown DOE DEPUTY shoved PLAINTIFF with a riot shield, causing PLAINTIFF to fall to the ground. PLAINTIFF does not resist the deputy.

30. Then, another unknown DOE DEPUTY pins PLAINTIFF to the ground. More DOE DEPUTIES surround PLAINTIFF and start to punch his body while he is lying on the ground. PLAINTIFF is informed and believes there are at least five

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

deputies pinning him down – three were on the left side of his body and two were on the right side of his body. One deputy on the right side of his body is kneeling on PLAINTIFF's legs, and the other deputy is striking PLAINTIFF's right ankle and foot repeatedly with a riot shield. PLAINTIFF's face is pressed into the ground.

31. PLAINTIFF's glasses were knocked off of his face during the altercation. PLAINTIFF yells, "My glasses! I can't see!" A DOE DEPUTY then deliberately steps on and breaks PLAINTIFF's glasses.

32. At some point, PLAINTIFF loses consciousness. When the DOE DEPUTIES handcuff PLAINTIFF, PLAINTIFF cannot move or get up. A DOE DEPUTY lifts PLAINTIFF's limp body off of the ground.

33. PLAINTIFF was taken to the emergency room, where he was treated for his injuries for approximately 3-4 hours. After PLAINTIFF was discharged from the emergency room, he was taken to the West Hollywood sheriff's station and held for approximately 18 hours.

34. During DOE DEPUTIES' unreasonable use of force, PLAINTIFF never threatened officers, was unarmed, lying face down on the ground, and posed no immediate threat of death, serious physical injury, or safety to any LASD Deputies, or any other person. Furthermore, at all times relevant, during PLAINTIFF's contact with Defendants, PLAINTIFF behaved peacefully. PLAINTIFF neither possessed or displayed any weapon, nor did he threaten anyone in any way. PLAINTIFF never resisted a lawful order and was never given any order or warning prior to the unreasonable use of force.

35. Despite PLAINTIFF showing signs of peacefulness and nonaggression, LASD Deputies repeatedly struck him with the riot shield on his right leg and ankle. DOE DEPUTIES also repeatedly punched PLAINTIFF all over his body, all while pressing their collective weight on his body. Defendants did not have any reasonable justification to use such unlawful and excessive force.

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

36. The use of force used by Defendants against PLAINTIFF caused severe injuries. A very high level of force was used, considering PLAINTIFF's reason for being present was to peacefully protest, and the force was unjustified and objectively unreasonable under the circumstances.

37. DOE DEPUTIES knew that PLAINTIFF's presence at the protest meant that he planned to take part of the peaceful protesting. Defendants used unreasonable tactics that included a large number of officers' present, kettling, a display of weapons (batons and firearm, including rubber bullet guns), use of weapons (striking PLAINTIFF repeatedly with the riot shield) without warning and without an opportunity for PLAINTIFF to comply with a command/warning.

38. At all material times, Defendants' excessive force was done without reasonable justification, or other legal right; lasted an excessive amount of time; and was conducted unreasonably. Alternatively, or concurrently, Defendants' own excessive and unreasonable actions created the situation in which Defendants decided to unlawfully use force against PLAINTIFF and caused an escalation of events leading to the unlawful use of force against, and injury to PLAINTIFF.

39. At all material times, and alternatively, the actions and omissions of each Defendant were intentional, wanton and/or willful, conscience shocking, reckless, malicious, deliberately indifferent to PLAINTIFF's rights, done with actual malice, excessive and objectively unreasonable.

40. PLAINTIFF required medical treatment for the injuries Defendants caused.

41. As a direct and proximate result of Defendants' actions and omissions as set forth above, PLAINTIFF sustained the following injuries and damages, past and future, among others:

    a. PLAINTIFF suffered physical injuries requiring medical treatment, including, but not limited to, losing consciousness, multiple lacerations, bruising hematomas, contusions, numbness, stiffness, swelling, skin discoloration, disorientation, headaches, memory loss,

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

muscle soreness, pain and discomfort, and difficulty walking.

b.  PLAINTIFF suffered from violation of his constitutional rights;

c.  Emotional trauma from wrongful arrest and 18 hours in custody;

d.  Fear over DACA status;

e.  Lost business opportunities;

f.  Medical expenses;

g.  Pain and suffering and emotional distress, including, but not limited to, trauma, grief, fright, anger, fear, nervousness around law enforcement officers, trepidation, shame and humiliation, difficulty sleeping, headaches, anxiety, nightmares and are unable to engage in typical day-to day activities as a result of fear of leaving their home;

h.  All damages, costs, and attorney's fees and penalties recoverable under 42 U.S.C. §§ 1983, 1988, and as otherwise allowed under California and United States statues, codes, and common law; and

i.  In any amounts according to proof and in excess of the minimum jurisdictional amount of this Court as well as for the use of money, pre and post judgment interest, and such other damages as deemed just and proper.

42. This incident was particularly traumatic for PLAINTIFF, who is a DACA recipient and has never had any encounters with law enforcement. PLAINTIFF was held in custody for approximately 18 hours during the height of the COVID-19 pandemic without a face mask. PLAINTIFF was, and still is, fearful of the effect that this encounter will have on his DACA status. PLAINTIFF still suffers from extreme emotional distress, anxiety, and feelings of helplessness.

### *MONELL* VIOLATIONS

43. PLAINTIFF realleges each and every allegation above with the same force and effect as if fully set forth herein.

44. Based upon the principals set forth in Monell v. New York City Department

of Social Services, 436 U.S. 658 (1978), COUNTY is liable for all injuries sustained by PLAINTIFF as set forth herein. COUNTY bears liability because its policies, practices and/or customs were a cause of PLAINTIFF's injuries, and/or because COUNTY ratified the unlawful actions of its employees that caused PLAINTIFF's injuries. COUNTY and its supervisory officials, maintained or permitted one or more of the following official policies, customs or practices which displayed reckless and deliberate indifference to the constitutional rights of persons such as PLAINTIFF, and were a direct cause of PLAINTIFF's damages:

a. In the wake of the murder of Breonna Taylor, COUNTY and LASD knew that large groups of peaceful protestors would exercise their First Amendment rights and they should be protected and respected, so those rights are not infringed. COUNTY and LASD also knew that a possibility existed where a minority of protestors might engage in criminal activity, including property destruction and looting. COUNTY, through the LASD, directed, condoned, encouraged its officers to disperse the large crowds in violation of their First and Fourth Amendment rights through unconstitutional curfews and violent assaults with LLM projectiles and baton strikes. Moreover, these violent assaults occurred while those looting and destroying property were often ignored;

b. By employing and retaining as police officers and other personnel, including DEFENDANTS DOE DEPUTIES and DOES 1-10, who Defendants COUNTY and DOE SUPERVISORS at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority by using excessive force, and for mistreating citizens by failing to follow written Police Department's policies of COUNTY, including the use of excessive force and reckless disregard for human life and safety;

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

c.  According to the aforementioned OIR report, COUNTY failed to conduct training on crowd control response to large protests for at least five years prior to this protest. While some officer took a course on advance techniques, even that training was several years old. The OIR identified this as a significant failure because LASD's policies and training did not incorporate current practices. Current California Peace Officer Standard and Tactics ("POST") guidelines for crowd control management were not met;

d.  By failing to provide adequate training to sheriff deputies with respect to constitutional limits on using the riot shield as a weapon. As a consequence, this riot shield was deployed indiscriminately and improperly as a weapon, causing PLAINTIFF and other demonstrators physical harm and fear even though they posed no threat of immediate physical harm to officers or others, and who were not violently resisting arrest;

e.  By failing to provide adequate supervision to sheriff deputies with respect to constitutional limits on using the riot shield as a weapon. As a consequence, this riot shield was deployed indiscriminately and improperly as a weapon, causing PLAINTIFF and other demonstrators physical harm and fear even though they posed no threat of immediate physical harm to officers or others, and who were not violently resisting arrest;

f.  By failing to have an adequate policy with respect to constitutional limits on using the riot shield as a weapon. As a consequence, this riot shield was deployed indiscriminately and improperly as a weapon, causing PLAINTIFF and other demonstrators physical harm and fear even though they posed no threat of immediate physical harm to officers or others, and who were not violently resisting

arrest;

g.  By inadequately disciplining COUNTY police officers, and other personnel, including Defendants DOE DEPUTIES and DOES 1-10, who DEFENDANTS COUNTY and DOE SUPERVISORS each knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits including the propensity for violence, reckless disregard for human life and safety, and the use of excessive force. As a consequence, these riot shields were deployed indiscriminately and improperly as a weapon, causing PLAINTIFF and other demonstrators physical harm and fear even though they posed no threat of immediate physical harm to officers or others, and who were not violently resisting arrest;

h.  By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by DOE OFFICERS, and DOES 1-10, who are COUNTY's employees and sheriff deputies;

i.  The use of force at the September 25, 2020 protest was ratified by COUNTY and LASD when it failed to discipline or retrain COUNTY sheriff deputies including DOE DEPUTIES and DOES 1-10, for their conduct; and

j.  The above-mentioned ratification promoted the belief that they can violate the rights of persons, such as PLAINTIFF, with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

///
///
///
///

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

## FIRST CLAIM FOR RELIEF

### First Amendment Retaliation

### (42 U.S.C. § 1983)

### (By PLAINTIFF against County of Los Angeles and Does 1-10)

45. PLAINTIFF realleges each and every allegation of this Complaint with the same force and effect as if fully set forth herein.

46. Demonstrations, protests, and right to speech, assembly, and association, are protected by the First Amendment to the United States Constitution. Defendants' actions using unlawful police tactics such as striking protestors with riot shields and the excessive force violated the First Amendment's prohibition on laws restricting speech.

47. To demonstrate a First Amendment violation a PLAINTIFF must show that the defendant's actions (1) chilled the PLAINTIFF's political speech and that (2) the deterrence was a substantial and motivating factor in their actions. Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283 (9th Cir. 1999).

48. As described above and herein, DEFENDANTS' conduct violated PLAINTIFF's rights to those constitutional protections.

I. **DEFENDANTS' UNLAWFUL USE OF FORCE DISALLOWED PLAINTIFF TO EXERCISE HIS RIGHT TO PEACEFULLY PROTEST WHEN THEIR ACTIONS FORCED HIM TO FEAR FOR HIS LIFE AND SAFETY.**

49. PLAINTIFF engaged in constitutionally protected activity when he went with others near Santa Monica and San Vicente Blvd., and peacefully protested the killings of Black Americans by Police violence.

50. Defendants' conduct and actions prevented PLAINTIFF from freely expressing his First Amendment Rights in association with, in demonstration on behalf of, and in support of the Black Lives Matter movement, which was his right as a citizen of the United States of America.

DOUGLAS / HICKS LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

51. Defendants' unlawful activity included assaulting him by using their riot shield as a weapon, when PLAINTIFF was not a threat to anyone's safety, and battering him.

52. Defendants' conduct was excessive and unreasonable as PLAINTIFF posed no threat whatsoever, and especially no immediate threat of death or serious bodily injury at the time of the shooting and was not aggressive or combative. PLAINTIFF received his injuries without receiving any audible orders from DEFENDANTS.

53. Furthermore, DOE DEPUTIES and DOES 1-10's conduct of using their riot shield as a weapon and excessive force violated their training and police officer standard training.

54. But for the Defendants' unlawful conduct, PLAINTIFF would have continued to express his First Amendment right of freedom of speech instead of being forced to stop protesting and run for his safety.

55. Defendant DOES, who are supervisors, are liable for their direct actions as supervisors that caused the deprivation of PLAINTIFF's constitutional rights.

56. Defendants COUNTY and DOES 1-10 are liable pursuant to *Monell* because they maintained, condoned, and/or permitted a policy, custom, and/or practice of conscious disregard of and reckless indifference to Constitutional rights, which was a moving force in the violation of the PLAINTIFF's rights and/or because they ratified the actions of their employees.

57. COUNTY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

58. The failure of COUNTY to provide adequate training caused the deprivation of PLAINTIFF's rights by and through DOE DEPUTIES and DOES 1-10; that is COUNTY's failure to train is so closely related to the deprivation of PLAINTIFF's rights as to be the moving force that caused the ultimate injury.

59. As a direct and proximate cause of DEFENDANTS' actions and omissions,

as set forth above, DEFENDANTS are liable for PLAINTIFF's injuries, either because they were integral participants in the deprivation of their Constitutional rights, or because they failed to intervene to prevent these violations despite having the opportunity to intervene. As a result of their conduct, PLAINTIFF suffered damages, including, but not limited to, extreme mental anguish and physical pain and suffering, loss of enjoyment of life, loss of earning capacity, and those set forth in the paragraphs above, and other pecuniary losses not yet ascertained.

60. As alleged herein, COUNTY maintained, *inter alia*, unconstitutional customs, practices, and policies as set forth herein, including, but not limited to:

    a. Directing, encouraging, promoting, tolerating and encouraging the use of unnecessary and excessive force;

    b. Employing and retaining as sheriff deputies and other personnel, including DOE DEPUTIES, who defendants COUNTY and DOE SUPERVISORS at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority by using excessive force, and for mistreating citizens by failing to follow written LASD's policies, including the use of excessive force and reckless disregard for human life and safety;

    c. Inadequately supervising, training, controlling, assigning, and disciplining police officers and other personnel, including DOE OFFICERS, who CITY and DOE SUPERVISORS each knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits including the propensity for violence, reckless disregard for human life and safety, and the use of excessive force;

    d. By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by DOE DEPUTIES, who employees and

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

police officers of COUNTY;

e. By failing to adequately train officers, including DOE DEPUTIES, and failing to institute appropriate policies, regarding constitutional procedures and practices for use of force and reckless disregard for human life and safety;

f. By failing to discipline COUNTY sheriff deputies' conduct, including DOE DEPUTIES, for use of force and reckless disregard for human life and safety;

g. By ratifying the intentional misconduct of DOE DEPUTIES, and other police officers, who are police officers of COUNTY, and commit unlawful use of force with reckless disregard for human life and safety;

h. By failing to properly and meaningfully investigate claims of reckless disregard for human life and safety and excessive force by LASD deputies, including DOE DEPUTIES;

i. By having and maintaining an unconstitutional custom and practice of reckless disregard for human life and safety, using excessive force, failing to obtain medical care, depriving persons of life, liberty, and property so as to shock the conscience, which is also demonstrated by inadequate training regarding these subjects; and

j. The customs and practices of COUNTY, DOE OFFICERS, and DOE SUPERVISORS were done with a deliberate indifference to individuals' safety and rights.

61. Defendants COUNTY and DOES 1-10 together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of PLAINTIFF, and other individuals similarly situation.

62. By perpetuating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, defendants COUNTY and DOES 1-10 acted with an intentional, reckless, and callous disregard toward Mr. NAVARETTE's constitutional rights. DEFENDANTS, and each of their actions, were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

63. PLAINTIFF is informed and believes and thereon alleges that the acts of the DOE DEPUTIES and DOES 1-10; were willful, malicious, intentional, reckless and/or were performed in willful and conscious disregard of PLAINTIFF's rights, justifying the awarding of punitive and exemplary damages against the individual defendants in an amount to be determined at the time of trial.

64. Accordingly, DEFENDANTS are each liable to PLAINTIFF for compensatory damages and individual DEFENDANTS are liable for punitive damages, under 42 U.S.C. § 1983. PLAINTIFF seeks attorney fees under this claim pursuant to 42 U.S.C. §1988.

## II. DEFENDANTS' CURFEW SUPRPRESSED PLAINTIFF'S FIRST AMENDMENT RIGHT BECAUSE IT RESTRICTED MORE SPEECH THAN NECESSARY WITHOUT ANY ALTERNATIVES AND RESTRICTED THEIR FREEDOM OF MOVEMENT WITHOUT RECEIVING DUE PROCESS NOTIFICATION OF THE ORDINANCE.

65. Although the defendants can punish activity that is unlawful conduct that may be connected to First Amendment speech, however, the defendants must only punish it after it occurs … First Amendment activity may not be banned simply because prior similar activity led to or involved instances of violence. Collins v.

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

Jordan, 110 F.3d 1363, 1371-72 (9th Cir. 1996). Since unlawful assembly can be declared only for assemblies that are violent or that pose a clear and present danger of imminent violence, In re Brown, 9 Cal.3d 612, 623 (Cal. 1973), curfews also may be authorized when the state has no other means to prevent actual or imminent mass violence.

66. DEFENDANTS curfew failed the narrow tailoring test not only because of the geographic scope, but also because the lock-down restricted all speech, which was more than necessary to achieve their goal.

67. Furthermore, their presumption of imminent mass violence was unfounded and there were less burdensome means for achieving COUNTY's aim that were available by employing traditional legal methods – especially when, as in this case, the number of damage or violence was extremely smaller than in comparison to the amount of nonviolent protest.

68. Additionally, PLAINTIFF has a right to freedom of movement, Nunez v. City of San Diego, 114 F.3d 935, 944 (9th Cir. 1997), and the ordinance's restrictions on movement were not narrowly tailored to accomplish their objective.

69. In essence, COUNTY's actions essentially placed everyone, including PLAINTIFF, on a curfew, starting in the late afternoon when businesses are usually opened and lasting throughout the night. The Constitution does not permit such a draconian deprivation of liberty under these circumstances, Nunez, 114 F.3d at 948, especially when the curfew failed to give sufficient notice – not requiring authorities to notify PLAINTIFF prior to enforcing them. Due Process required that the notice be of such nature as reasonably to convey the required information. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950). As stated herein, the DOE DEPUTIES failed to give any order prior to assaulting and striking PLAINTIFF.

70. Defendants' conduct and actions of enforcing this unlawful curfew prevented PLAINTIFF from freely expressing his First Amendment Rights in

association with, in demonstration on behalf of and in support of the Black Lives Matter movement, which was their right as citizens of the United States of America.

71. Defendants DOES, who are supervisors, are liable for their direct actions as supervisors that caused the deprivation of PLAINTIFF' constitutional rights.

72. Defendants COUNTY and DOES Defendants are liable pursuant to *Monell* because they maintained, condoned, and/or permitted a policy, custom, and/or practice of conscious disregard of and reckless indifference to Constitutional rights, which was a moving force in the violation of the PLAINTIFF' rights and/or because it ratified the actions of its employees.

73. COUNTY was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

74. The failure of COUNTY to provide adequate training caused the deprivation of PLAINTIFF' rights by DOE OFFICERS and DOES 1-10; that is Defendants' failure to train is so closely related to the deprivation of PLAINTIFF's rights as to be the moving force that caused the ultimate injury.

75. As a direct and proximate cause of DEFENDANTS' actions and omissions, as set forth above, DEFENDANTS are liable for PLAINTIFF's injuries, either because they were integral participants in the deprivation of their Constitutional rights, or because they failed to intervene to prevent these violations despite having the opportunity to intervene. As a result of their conduct, PLAINTIFF suffered damages, including, but not limited to, extreme mental anguish and physical pain and suffering, loss of enjoyment of life, loss of earning capacity, and those set forth in the paragraphs above, and other pecuniary losses not yet ascertained.

76. As alleged herein, COUNTY maintained, *inter alia*, unconstitutional customs, practices, and policies as set forth herein, including, but not limited to:

    a. Directing, encouraging, promoting, tolerating and encouraging the use of unnecessary and excessive force;

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

b.  Employing and retaining as police officers and other personnel, including DOE DEPUTIES, who DEFENDANTS COUNTY and DOE SUPERVISORS at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority by using excessive force, and for mistreating citizens by failing to follow written LASD's policies, including the use of excessive force and reckless disregard for human life and safety;

c.  Inadequately supervising, training, controlling, assigning, and disciplining police officers and other personnel, including DOE DEPUTIES, who COUNTY and DOE SUPERVISORS each knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits including the propensity for violence, reckless disregard for human life and safety, and the use of excessive force;

d.  By maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the intentional misconduct by DOE DEPUTIES, who employees and police officers of COUNTY;

e.  By failing to adequately train officers, including DOE DEPUTIES, and failing to institute appropriate policies, regarding constitutional procedures and practices for use of force and reckless disregard for human life and safety;

f.  By failing to discipline COUNTY sheriff deputies' conduct, including DOE DEPUTIES, for use of force and reckless disregard for human life and safety;

g.  By ratifying the intentional misconduct of DOE DEPUTIES, and other police officers, who are police officers of COUNTY, and

commit unlawful use of force with reckless disregard for human life and safety;

h.  By failing to properly and meaningfully investigate claims of reckless disregard for human life and safety and excessive force by LASD officers, including DOE DEPUTIES; and

i.  By having and maintaining an unconstitutional custom and practice of reckless disregard for human life and safety, using excessive force, failing to obtain medical care, depriving persons of life, liberty, and property so as to shock the conscience, which is also demonstrated by inadequate training regarding these subjects.

j.  The customs and practices of COUNTY, DOE DEPUTIES, and DOE SUPERVISORS were done with a deliberate indifference to individuals' safety and rights.

77. Defendants COUNTY and DOES 1-10 together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the PLAINTIFF's constitutional rights, and other individuals similarly situation.

78. By perpetuating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, defendants COUNTY and DOES 1-10 acted with an intentional, reckless, and callous disregard toward PLAINTIFF's constitutional and state rights. Defendants and each of their actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

79. PLAINTIFF is informed and believes and thereon alleges that the acts of the

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

DOE DEPUTIES and DOES 1-10; were willful, malicious, intentional, reckless and/or were performed in willful and conscious disregard of PLAINTIFF's rights, justifying the awarding of punitive and exemplary damages against the individual Defendants in an amount to be determined at the time of trial.

80. Accordingly, DEFENDANTS are each liable to PLAINTIFF for compensatory damages and individual DEFENDANTS are liable for punitive damages, under 42 U.S.C. § 1983. PLAINTIFF seeks attorney fees under this claim pursuant to 42 U.S.C. §1988.

## SECOND CLAIM FOR RELIEF

**Fourth Amendment Unreasonable Search and Seizure – Excessive Force and Wrongful Arrest**

**(42 U.S.C. § 1983)**

**(By Plaintiff against County of Los Angeles and Does 1-10)**

81. PLAINTIFF realleges each and every allegation of this Complaint with the same force and effect as if fully set forth herein.

82. Defendants' conduct, described above, violated MR. NAVARETTE's rights to be free from unreasonable and excessive or arbitrary force without reasonable or probable cause under the Fourth Amendment to the United States Constitution.

83. Defendants hit Mr. NAVARETTE in the lower body repeatedly with a riot shield while also striking him all over his body which resulted in loss of consciousness, diminished mobility, contusions, and inability to work.

84. Defendants' conduct was excessive and unreasonable as MR. NAVARETTE posed no immediate threat of death or serious bodily injury to any deputy or anyone at the time of the assault. PLAINTIFF peacefully protested when he sustained his injuries without receiving any audible orders from Defendants.

85. Further, DOE DEPUTIES and DOES 1-10, conduct of using a riot shield as a weapon and other excessive use of force violated their training, and police officer standard training, as they acted indiscriminately and inconsistent with policies and

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

procedures striking those who presented no imminent threat of harm to an officer or others, or who was not violently resisting arrest.

86. In violation of the Fourth Amendment, defendants used unreasonable and excessive force based on the potentially unlawful acts of others, not based on a determination of individual conduct justifying such force.

87. DOES 1-10, who are supervisors, are liable for their direct actions as supervisors which caused the deprivation of MR. NAVARETTE's constitutional rights.

88. On information and belief, DOE DEPUTIES and other DOES 1-10 involved were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with MR. NAVARETTE's injuries.

89. On information and belief, COUNTY failed to properly and adequately train DOE DEPUTIES and DOES 1-10, including but not limited to, with regard to the use of physical force, and less than lethal force on individuals peacefully protesting and/or members of the press documenting the protests.

90. Defendants COUNTY and DOES DEFENDANTS are liable pursuant to *Monell* because it maintained, condoned and/or permitted a policy, custom and/or practice of conscious disregard of and reckless indifference to Constitutional rights which was a moving force in the violation of MR. NAVARETTE'S rights and/or because it ratified the unconstitutional conduct of its employees.

91. Defendants COUNTY and DOES DEFENDANTS were deliberately indifferent to the obvious consequences of its failure to train its deputies adequately.

92. The failure of COUNTY to provide adequate training caused the deprivation of MR. NAVARETTE's rights by Defendants DOES 1-10; that is Defendants' failure to train is so closely related to the deprivation of MR. NAVARETTE's rights as to be the moving force that caused the ultimate injury.

93. As a direct and proximate cause of Defendants' actions and omissions, as

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

set forth above, Defendants are liable for MR. NAVARETTE's injuries, either because they were integral participants in the excessive force, or because they failed to intervene to prevent these violations despite having the opportunity to intervene. As a result of their conduct, Mr. NAVARETTE suffered damages, including, but not limited to, extreme mental anguish and physical pain and suffering, loss of enjoyment of life, loss of earning capacity, and those set forth in the paragraphs above, and other pecuniary losses not yet ascertained.

94. The aforementioned customs and practices of COUNTY were implemented and/or maintained with deliberate indifference to individuals' safety and rights.

95. Defendants COUNTY and DOES 1-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these Defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said Defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of MR. NAVARETTE, and other individuals similarly situation.

96. By perpetuating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants COUNTY and DOES 1-10 acted with an intentional, reckless, and callous disregard toward Mr. NAVARETTE, and of the constitutional as well as human rights of MR. NAVARETTE. Defendants and each of them, actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

97.MR. NAVARETTE is informed and believes and thereon alleges that the acts of the DOE DEPUTIES and DOES 1-10; were willful, malicious, intentional, reckless and/or were performed in willful and conscious disregard of MR. NAVARETTE's rights, justifying the awarding of punitive and exemplary

damages against the individual Defendants in an amount to be determined at the time of trial.

98. Accordingly, DEFENDANTS are each liable to MR. NAVARETTE for compensatory damages and individual Defendants are liable for punitive damages, under 42 U.S.C. § 1983. MR. NAVARETTE seeks attorney fees under this claim pursuant to 42 U.S.C. § 1988.

## THIRD CLAIM FOR RELIEF

### Municipal Liability for Unconstitutional Custom, Practice or Policy
### (42 U.S.C. § 1983)

### (By Plaintiff against County of Los Angeles and Does 1-10)

99. PLAINTIFF realleges each and every allegation of this Complaint with the same force and effect as if fully set forth herein.

100.    On and for some time prior to September 25, 2020 (and continuing to present date) Defendants deprived PLAINTIFF of rights and liberties secured to him by the Fourth and Fourteenth Amendments to the United States Constitution, in that defendants and their supervising and managerial employees, agents, and representatives, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of PLAINTIFF, and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy and practice of those set forth in the paragraphs above, and:

   a. Employing and retaining as sheriff deputies and other personnel who, at all times material herein, knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by failing to follow written COUNTY Sheriff Department policies;

   b. Of inadequately supervising, training, controlling, assigning, and disciplining COUNTY police officers, and other personnel, who

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

COUNTY knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits;

c.  By failing to adequately train officers, including DOES 1-10, and failing to institute appropriate policies, regarding the use of excessive force, including deployment of a riot shield as a weapon;

d.  By having and maintaining an unconstitutional policy, custom, and practice of using excessive force, deployment of a weapon, which also is demonstrated by inadequate training regarding these subjects. These policies, customs, and practices were done with a deliberate indifference to individuals' safety and rights; and

e.  Of completely inadequately training COUNTY sheriff deputies and DOES 1-10, with respect to maintain civilized order during street protests.

101.    By reason of the aforementioned policies and practices of COUNTY and DOES 1-10, PLAINTIFF was severely injured and subjected to pain and suffering, and loss of enjoyment of life.

102.    Defendants COUNTY and DOES 1-10, together with various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices and customs alleged in the paragraphs above. Despite having knowledge as stated above, these defendants condoned, tolerated and through actions and inactions thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of MR. NAVARETTE and other individuals similarly situated.

103.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Defendants COUNTY and DOES 1-10, acted with an intentional, reckless, and callous disregard for the constitutional rights of MR. NAVARETTE. Defendants COUNTY and DOES 1-10, actions were willful,

DOUGLAS / HICKS
LAW, APC
5120 W. Goldleaf Cir., Suite 140
Los Angeles, California 90056

wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

104.     Furthermore, the policies, practices, and customs implemented and maintained and still tolerated by COUNTY and DOES 1-10, were affirmatively linked to and were a significantly influential force behind the injuries of MR. NAVARETTE.

105.     By reason of the acts and omissions of Defendants COUNTY and DOES 1-10, PLAINTIFF incurred damages, including but not limited to, medical expenses, loss of enjoyment of life and earning capacity.

106.     By reason of the acts and omissions of COUNTY and DOES 1-10, PLAINTIFF has suffered loss of love, companionship, affection, comfort, care, society, and future support.

107.     Accordingly, Defendants COUNTY and DOES 1-10, each are liable to PLAINTIFF for compensatory damages under 42 U.S.C. § 1983.

108.     PLAINTIFF also seeks attorney fees under this claim.

## FOURTH CLAIM FOR RELIEF

### Municipal Liability – Failure to Properly Train

### (42 U.S.C. § 1983)

### (By Plaintiff against County of Los Angeles and Does 1-10)

109.     PLAINTIFF realleges each and every allegation of this Complaint with the same force and effect as if fully set forth herein.

110.     While acting under the color of state law and within the course and scope of their employment as police officers for COUNTY sheriff department, DOES 1-10 used a riot shield as a weapon, depriving PLAINTIFF of his rights and liberties secured to him by the First Amendment, including the right to the freedom of speech, thought and expression.

111.     The training policies of COUNTY sheriff department were not adequate to train its police officers, including but not limited to those set forth in

the paragraphs above, and especially with regards to using a riot shield as a weapon or using physical force. As a result, COUNTY sheriff deputies, including DOES 1-10, are not able to handle the usual and recurring situations with which they must deal, including contacting unarmed individuals. These inadequate training policies existed prior to the date of this incident and continue to this day.

112.    COUNTY sheriff department was deliberately indifferent to the known or obvious consequences of its failure to train its deputies, including DOES 1-10, adequately with regards to using w a riot shield as a weapon or physical force. This inadequate training includes failing to teach deputies to give a verbal warning when feasible prior to using physical force, to give commands when feasible prior to using physical force, and to use less harmful options prior to resorting to using physical force.

113.    COUNTY and DOES 1-10 knew that failure to implement some sort of training with regard to their deputies' use of riot shield as a weapon and dealing with unarmed suspects would result in continuing to have numerous unreasonable deputies involved excessive force claims involving unarmed individuals annually.

114.    The failure of COUNTY sheriff department to provide adequate training with regards using a riot shield as a weapon and physical force, caused the deprivation of the PLAINTIFF's rights by DOES 1-10. Defendants' failure to train is so closely related to the deprivation of the PLAINTIFF's rights as to be the moving force that caused the ultimate injury.

115.    By failing to provide adequate training to COUNTY's sheriff deputies, including DOES 1-10, Defendants acted with an intentional, reckless, and callous disregard for MR. NAVARETTE's constitutional rights. Defendants' actions were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities.

116.    By reason of the aforementioned acts and omissions of Defendant DOES 1-10, PLAINTIFF was caused to incur medical expenses, loss of enjoyment

of life earning capacity and other damages as will be proven at trial.

117.     Accordingly, Defendants COUNTY and DOES 1-10, each are liable to PLAINTIFF for compensatory damages under 42 U.S.C. § 1983.

118.     PLAINTIFF seeks statutory attorney fees under this claim.

### **PRAYER FOR RELIEF**

**WHEREFORE**, PLAINTIFF prays for judgment against Defendants and each of them, as follows:

1. For compensatory (or general) and non-economic damages, in an amount to be proven at trial;

2. For special damages according to proof;

3. For punitive damages allowed by law against the individual, non-government entity, Defendants in an amount to be proven at trial;

4. For equitable relief;

5. For prejudgment and post judgement interest as permitted by law;

6. For reasonable costs of this suit incurred herein

7. For attorneys' fees as allowed by law;

8. For civil penalties as allowed by law;

9. Costs of suit; and

10. For such further other relief as the Court may deem just, proper and appropriate.


Dated: September 8, 2022

**DOUGLAS / HICKS LAW, APC**


By:     ___***/s/ Jamon R. Hicks***___

JAMON R. HICKS
Attorneys for PLAINTIFF
ANGEL NAVARETTE

## DEMAND FOR JURY TRIAL

PLAINTIFF hereby demands a trial by jury in this action.

Dated: September 8, 2022

**DOUGLAS / HICKS LAW, APC**

By: _____*/s/ Jamon R. Hicks*_____
JAMON R. HICKS
Attorneys for PLAINTIFF,
ANGEL NAVARETTE